PAUL B. NOONE *vs.* CONTRIBUTORY RETIREMENT APPEAL
BOARD & another.[1]

Suffolk. April 9, 1993. - July 14, 1993.

Present: GILLERMAN, KAPLAN, & GREENBERG, JJ.

*Retirement. Public Employment,* Accidental disability retirement. *Contributory Retirement Appeal Board.*

In considering a public employee's application for accidental disability retirement benefits, the proper role of the regional medical panel convened under G. L. c. 32, § 6 (3) (*a*), was to express its opinion whether a medical possibility existed that the applicant's disability was the natural and probable result of a work related injury; where the board exceeded its authority by expressing an unqualified negative opinion as to causation, its opinion was a nullity. [761-762]

In considering a public employee's application for accidental disability retirement benefits, the regional medical panel convened under G. L. c. 32, § (3)(*a*), improperly relied on various personal characteristics and hereditary factors placing the applicant at risk for heart disease to justify its conclusion that his disability resulting from myocardial infarction was not work related. [762-763]

A decision of the Contributory Retirement Appeal Board, resting on the erroneous opinion of a regional medical panel under G. L. c. 32, § 6(3)(*a*), was erroneous as matter of law. [763-764]

CIVIL ACTION commenced in the Superior Court Department on January 9, 1991.

The case was heard by *Hiller B. Zobel,* J.

*Thomas P. Noone* for the plaintiff.

*Rosemary S. Gale,* Assistant Attorney General, for the defendants.

GILLERMAN, J. Paul B. Noone, a Superior Court probation officer, was denied his 1985 application for accidental disability retirement benefits under the provisions of G. L. c. 32, § 7(1). Section 7(1) requires that the applicant be totally

---

[1]The State Board of Retirement is also a named defendant in the complaint.

and permanently incapacitated for further duty by reason of an injury sustained as a result of the performance of the applicant's duties.[2] The qualifying injuries identified by Noone were myocardiac infarction, for which he was hospitalized in 1983, hypertension with elevated blood pressure, and endocarditis, for which he was hospitalized in November, 1984. We conclude that the decision of the Contributory Retirement Appeal Board (CRAB) was in error, and we remand the case to the Superior Court for further proceedings.

1. *Prior proceedings.* In response to Noone's application, the regional medical panel required by G. L. c. 32, § 6(3)(*a*),[3] examined Noone, his hospital records, and the

---

[2]General Laws c. 32, § 7(1), as amended through St. 1982, c. 630, § 18, provides, in pertinent part, as follows: "Any member in service classified in Group 1, Group 2 or Group 4, or any member in service classified in Group 3 to whom the provisions of subdivision (2) of section twenty-six are not applicable, *who becomes totally and permanently incapacitated for further duty before attaining the maximum age for his group by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties* at some definite place and at some definite time . . . upon his written application on a prescribed form filed with the board . . . shall be retired for accidental disability . . . . No such retirement shall be allowed unless the board, after a review of the evidence it deems appropriate, and after a review by the commissioner pursuant to the provisions of section twenty-one, and including in any event on examination by the regional medical panel provided for in subdivision (3) of section six and including a certification of such incapacity by a majority of the physicians on such medical panel, shall find that such member is mentally or physically incapacitated for further duty to the extent and under the circumstances set forth in this section, that such incapacity is likely to be permanent, and that he should be so retired . . ." (emphasis added).

[3]General Laws c. 32, § 6(3)(*a*), as amended through St. 1987, c. 697, §§ 31, 32, provides, in pertinent part, as follows:

"*No member shall be retired for a disability under the provisions of this section or section seven unless he has been examined first by a regional medical panel* and unless the physicians on such panel, after such examination, shall review the pertinent facts in the case, and such other written and oral evidence as the applicant and the employer may present to be reviewed in making a determination of the member's medical condition. No physician having previously examined the member, except as part of a prior disability medical panel, shall serve on the regional medical panel examining the member. At the conclusion of such examination, but in not more than sixty days, the panel shall certify to the board in writing whether such physicians on said panel find that such member is mentally

report of Noone's physician, Dr. Lawrence Baker. The board certified that Noone was totally and permanently incapacitated to perform his duties as a probation officer by reason of "coronary heart disease, history of degenerative disc disease, and chronic anxiety state." In response to the third question required to be answered by G. L. c. 32, § 6(3)(*a*) — whether the disability was "such as *might be* the natural and proximate result of the personal injury sustained or hazard undergone on account of which retirement is claimed" (emphasis added)[4] — the panel answered, "no; predisposed to coronary heart disease by multiple risk factors; myocardial infarction was not work-related."

The certificate of the panel was submitted to the State Board of Retirement (the State board) on March 29, 1989.[5] It is the State or local board which makes the initial determination of causation based on medical and nonmedical facts. See *Kelley* v. *Contributory Retirement Appeal Bd.*, 341 Mass. 611, 614 (1961). The State board denied Noone's application, and Noone appealed the adverse decision to CRAB. See G. L. c. 32, § 16(4).[6]

---

or physically incapacitated for further duty and that such incapacity is likely to be permanent, and in any case involving a retirement under section seven, *the panel physicians shall state further whether or not the disability is such as might be the natural and proximate result of the accident or hazard undergone on account of which retirement is claimed under said section seven*" (emphasis added).

[4]The difference in the expressions of the idea of causation which appear in § 6(3)(*a*) ("natural and proximate cause"), and § (7)(1) ("as a result of") has no legal significance. See *Campbell* v. *Contributory Retirement Appeal Bd.* 17 Mass. App. Ct. 1018 (1984).

[5]The record before us does not include an explanation for the four-year delay from the date of the application to the date of the decision of the panel.

[6]General Laws c. 32, § 16(4), as amended through St. 1987, c. 697, § 48, provides, in pertinent part, as follows:

"The contributory retirement appeal board, after giving due notice, shall, not less than ten nor more than sixty days after filing of any such claim of appeal, assign such appeal to the division of administrative law appeals for a hearing. The division of administrative law appeals shall maintain the official records of the contributory retirement appeal board. *The contributory retirement appeal board shall then pass upon the appeal* within six months after the conclusion of such hearing, and its decision shall be final and binding upon the retirement board involved and upon all

CRAB, as required by § 16(4), assigned the appeal to the division of administrative law appeals for a hearing by an administrative magistrate. See G. L. c. 7, § 4H. Noone testified on his own behalf and submitted the medical report of two physicians, Dr. Schwartzreich, whose report was not before the medical panel, and Dr. Baker, whose report was considered by the panel.

On the basis of Noone's testimony and hospital records, the medical reports of his physicians, and the certificate of the medical panel, the magistrate made extensive findings of fact. In brief, the magistrate found that in the 1980's Noone was pursued by a person who at one time was obliged to report to Noone as his probation officer. The probationer later accused Noone of attempted extortion, but Noone was found innocent of all charges. Later still, while subsequently incarcerated, the probationer made it known that Noone was on his "hit list" upon his release from State prison. On May 19, 1983, approximately one month after the receipt of this threat, Noone, while at work, reached for his briefcase, which weighed approximately twenty to thirty pounds, and pulled it up to his desk. Severe pain in his chest, left arm and jaw, followed, and he was taken to the Salem Hospital emergency room. The diagnosis was "acute posterior myocardial infarction." Noone returned to work about October 1, 1983.

On November 27, 1984, Noone was hospitalized with endocarditis. The magistrate found that the panel concluded that this event was unrelated to Noone's previous myocardial infarction. The magistrate also found, however, that Dr. Baker had opined that the myocardial infarction had left Noone with a deficiency in "cardiac reserve" and thus bore a direct relationship to the subsequent work-related endocarditis. Noone returned to work in January, 1985. He last worked in July, 1986, when he fell down a flight of stairs while visiting a probationer and sustained an acute herniated disc.

---

other parties to the appeal, and shall be complied with by such board and by such parties to the appeal. . . ."

The magistrate described what she regarded as defects in the certificate of the medical panel: (i) the panel, in concluding that the myocardial infarction was not work-related, relied on risk factors even though risk factors are merely markers to alert physicians to the possible increased risks of the development of coronary heart disease, (ii) the panel was in error on the facts of Noone's risk factors; contrary to the finding of the panel, Noone's father did not die of heart disease; that error made a valid assessment of Noone's risk factors impossible, and (iii) the panel did not have and did not consider the detailed medical report of Dr. Schwartzreich, which concluded that Noone should stop work because of the danger of another cardiovascular event caused by stress on the job, including the threats to his life by the former probationer.

According to the magistrate, the report of the panel, and its focus on risk factors, left unanswered two questions: could the physical stress on Noone produced by lifting a heavy briefcase on May 19, 1983 — the event that immediately preceded Noone's hospitalization for myocardial infarction — be sufficient to amount to a "personal injury" caused by the performance of his duties? Did the myocardial infarction leave Noone with a diminution of coronary reserve as Dr. Baker had opined?

The magistrate concluded that Noone had been "deprived of a proper medical panel evaluation in accordance with G. L. c. 32, § 6(3)," and recommended that the application be remanded to a new medical panel.

CRAB's decision, after reciting the adoption of all the findings of fact of the magistrate, and after stating that an affirmative certificate of the medical panel is a "condition precedent" to an award of benefits, states:

> "In this case, the members of the medical panel unanimously certified that [Noone] was totally and permanently incapacitated from performing his duties but further certified that there was not a medical possibility of a causal relationship between the disability and a personal injury or hazard undergone while in the perform-

ance of duties. Upon the facts as found and the reasonable inferences to be drawn [, i]t is this board's finding that [Noone] has not sustained his burden of showing a causal relationship between his disability and a personal injury or hazard undergone while in the performance of his duties. The decision of the [State board] is, therefore, affirmed."

Noone filed a complaint in the Superior Court, see G. L. c. 30A, § 14, seeking judicial review of the CRAB decision, and a judge of the Superior Court affirmed.

2. *Discussion.* The panel's certificate was in error in two respects. Of primary importance is the fact that the medical panel did not satisfactorily answer the third question assigned to it by G. L. c. 32, § 6(3)(*a*):[7] whether, in the opinion of the panel, the total and permanent disability of Noone "is such as *might be* the natural and proximate result" of a work-related injury (emphasis added). In block "K" of the form of certificate provided by the Commonwealth, the panel answered "No" to the third issue. But the form also called upon the panel to state "the medical basis for your conclusion."[8] It was in response to that instruction that the panel answered: "predisposed to coronary heart disease by multiple risk factors; myocardial infarction was not work-related."

The response of the panel is not without some ambiguity. Nevertheless, we take the effect of their certificate to be this: rather than stating whether Noone's disability "might be" a work-related injury, as required by the statute, the panel gave an unqualified certificate that it was "not work-related." This construction is confirmed by the text of an accompanying letter to the State board from the chairman of the medical panel. The letter, which recapitulates the work and findings of the panel, concludes that "[t]he panel carefully considered the multiple risk factors which he [Noone]

---

[7]The first two questions are whether the claimed disability is total and whether it is permanent.

[8]The introduction to the form states that "the panel should be as expansive as possible. A cursory statement may mitigate the weight of the panel's expert opinion."

was predisposed to coronary heart disease [*sic*] and the panel concluded acute myocardial infarction was not work-related. The panel has therefore answered unanimously no to question three."

The panel has no statutory authority to express an unqualified negative opinion as to causation, and such an opinion, if expressed, is a nullity.[9] *Kelley* v. *Contributory Retirement Appeal Bd.*, 341 Mass. at 614-616. This is because the local board is entitled to know whether, in the opinion of the panel, there is a medical *possibility* that the causal relation exists; absent such information, the local board lacks medical information that, with nonmedical facts presented to the board, provides the basis for the decision of the local board on the question of causation. As noted above, the statute gives to the local board, not to the panel, the determination whether, on the relevant evidence, the causal relationship exists. As *Kelley*, *supra* at 616, points out, where "the certificate states only the conclusion that there is no causal connection, the local board does not know whether the opinion of the physicians on the possibility of causal connection is such that the board may proceed with the case."

A second, and independent, ground for the legal insufficiency of the panel's certificate is the fact that the panel's reliance on "risk factors"[10] does not explain or justify its negative answer on causation. The issue, as the Supreme Judi-

---

[9]*Malden Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 1 Mass. App. Ct. 420 (1973), upon which CRAB relies, does not control this case. In *Malden*, unlike the case before us, the panel's certificate *complied* with G. L. c. 32, § 6(3)(*a*), the principal issue there being simply whether CRAB could substitute its opinion for that of the majority of the panel.

[10]CRAB's brief acknowledges that the basis for the panel's determination that the myocardial infarction was not work-related was the panel's finding that Noone was "predisposed to coronary heart disease by multiple risk factors." The risk factors to which the panel referred were smoking, family history of heart disease (father and brother), obesity, and elevated cholesterol. The magistrate found that Noone's father did not die of a heart attack and that his mother died of diabetes. Further, in 1988, Noone's physician, after a physical examination, reported that Noone was five feet, eleven inches tall, and weighed 218 pounds. The Salem hospital record from 1983 states that Noone is "slightly obese."

Two prior CRAB decisions involve a panel's reliance on risk factors. See *Humphrey* v. *Boston Retirement Bd.*, CR-87-464 (1988); *O'Connor* v. *Boston Retirement Bd.*, CR-9630 (1988). The magistrate in both of the

cial Court has pointed out, is whether the disability of the applicant was caused by the gradual deterioration of his cardiac organs — and thus not work-related — or whether his or her disability "was accelerated by a strain or exertion attributable to his work. . . ." *Brzozowski's Case*, 328 Mass. 113, 116 (1951). See *Blair* v. *Selectmen of Brookline*, 24 Mass. App. Ct. 261, 264 (1987). Contrast *Zerofski's Case*, 385 Mass. 590, 594-595 (1982) (distinguishing between compensable injuries arising from a specific injury at work and "wear and tear" injuries). It is not necessary that the work which caused the strain be heavy or unusual. *Brzozowski's Case, supra* at 115. *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 479, 485 n.4 (1985). The substantive issue that the statute assigns to the medical panel — whether Noone's total and permanent disability was such as "might be" work-related — is not answered by reference to risk factors.

CRAB's underlying error is that it mistakes the nature of the hearing before the board when a negative certificate of the medical panel is in evidence.[11,12] General Laws c. 32,

---

cited cases pointed out that risk factors alone are not causes of disease. In Humphrey CRAB reversed the negative finding of causation by the medical panel. In O'Connor CRAB remanded the case to the medical panel to determine whether the applicant's heart condition was work-related. (Both cases involved the so-called heart law presumption provided by G. L. c. 32, § 94 — a presumption not available to probation officers.)

[11]The precise contours of a hearing before CRAB are not easily described. Contrast the description of the proceedings before CRAB as a "de novo hearing" in *Masiello* v. *Contributory Retirement Appeal Bd.*, 360 Mass. 856, 857 (1971), and as a "de novo fact-finding role" in *Namay* v. *Contributory Retirement Appeal Bd.*, 19 Mass. App. Ct. 456, 462 n.8 (1985), with the statements in *Kelley, supra* at 617 (an applicant does not have the opportunity "for a retrial of the medical facts" where the medical panel has applied proper procedures and correct principles of law) and the statement in *Namay* v. *Contributory Retirement Appeal Bd., supra* at 462 n.9, that the panel's certificate, when not tainted by error of law, has "independent legal significance." Further, CRAB has the power under § 16(4) to "employ a registered physician to advise them in the determination of an appeal." But, as we have previously written, this is a "difficult area of the law," *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. at 487, that is "notoriously complex." *Namay, supra* at 463.

[12]When the medical panel issues an *affirmative* certificate as to causation, its certificate is merely some evidence on the issue. See *Blanchette, supra* at 483.

§ 16(4), gives "any person . . . aggrieved" by a decision of a retirement board the right to appeal to CRAB, and *Kelley* holds that "an applicant . . . [is not] foreclosed by a plainly wrong medical certificate, or by a certificate made without conforming to the required procedure or physical examination and review of all the pertinent facts. It follows that [CRAB] may not affirm the decision of the local board on a negative certificate without giving the applicant an opportunity to show such wrong or illegal action. . . ." 341 Mass. at 617.

We conclude that the CRAB decision, resting entirely, as it does, on the erroneous opinion of the medical panel, is itself erroneous as matter of law, see G. L. c. 30A, § 14(7)(*c*), and its decision must be vacated.[13]

The case is to be remanded to the Superior Court for the entry of a judgment ordering a remand to CRAB for further proceedings. See *Kelley, supra* at 618. There should be a certificate by the medical panel as to whether Noone's disability resulted from an injury such as "might be the natural and proximate result" of the performance of his duties. *Id.* at 616. See *Namay* v. *Contributory Retirement Appeal Bd.*, 19 Mass. App. Ct. 456, 462 n.9 (1985). The medical panel may seek and consider additional facts and opinions on the issue of causation. The certificate of the medical panel, together

---

[13]We also note that the CRAB decision states that it adopted the findings of the magistrate and recites that its conclusion is based upon the magistrate's findings of fact and the reasonable inferences therefrom. However, the findings of the magistrate point in the opposite direction from that taken by CRAB. The result is that CRAB, while stating that it has adopted the findings of the magistrate, appears in fact to have rejected them without a sufficient explanation. See *Vinal* v. *Contributory Retirement Appeal Bd.*, 13 Mass. App. Ct. 85, 92 n.4, 100-102 (1982) (G. L. c. 30, § 11[8], is not satisfied where CRAB "adopted" the subsidiary findings of hearing officer but "made virtually no mention" of those findings in its decision).

with Noone's application, may then proceed to the State board for a decision on Noone's application.[14]

*So ordered.*

---

[14]We decline to reach Noone's argument (made for the first time on appeal and barely touched on in his brief, see Mass.R.A.P. 16[a][4], as amended, 367 Mass. 921 [1975]) that he was, in any event, qualified to receive ordinary disability retirement notwithstanding his appeal from the decision of the State board. We note, however, that CRAB's contention that he is not entitled to such benefits is far from obvious; further exploration of the issue in the proceedings on remand, if appropriate, should not be foreclosed.