GREGORY FAIRBAIRN *vs.* CONTRIBUTORY RETIREMENT APPEAL BOARD & another.[1]

No. 99-P-315.

Suffolk. November 10, 2000. - April 1, 2002.

Present: ARMSTRONG, C.J., PERRETTA, & BECK, JJ.

*Contributory Retirement Appeal Board. Public Employment,* Accidental disability retirement.

The majority of the doctors on a regional medical panel, in concluding that an employee's disability was not the natural and proximate result of the workplace accident on account of which the employee was claiming disability retirement benefits, used the proper standard in evaluating the relationship between the accident and the employee's work and did not simply rely on a single statistical explanation without considering the alternatives; therefore, this court found no basis on which to reject the conclusion of the defendant retirement board that the plaintiff was not eligible for benefits. [357-362]

CIVIL ACTION commenced in the Superior Court Department on April 23, 1998.

The case was heard by *Margaret R. Hinkle,* J.

*Avram G. Hammer (John W. Costello* with him) for the plaintiff.

*John R. Hitt,* Assistant Attorney General, for the defendant.

BECK, J. Gregory Fairbairn (employee), a diesel power plant operator at the Massachusetts Water Resources Authority (MWRA), appeals from the denial of his application for accidental disability retirement. On January 7, 1993, while performing the duties of his job, a wooden staircase collapsed beneath him, causing him to fall six feet. He twisted his right knee when he landed on a cement foundation. The employee, who was thirty-six years old at the time of the accident, had a

---

[1]State Board of Retirement.

twenty-year history of problems with both knees, including multiple surgeries. Nevertheless, he had worked at his job at the MWRA continuously for eight years prior to the accident. He did not return to work after the accident. Although his treating doctors concluded that he was permanently disabled as a result of the accident, his application for accidental disability retirement was denied. On appeal, he claims that two members of the regional medical panel used the wrong legal standard in evaluating the relationship between the accident and his work. He argues that his case should be remanded to the Contributory Retirement Appeal Board (CRAB) and referred to a new medical panel for proper certification.

*The regional medical panel.* To qualify for an accidental disability retirement, an employee must be examined by a regional medical panel. See G. L. c. 32, §§ 6(3)(*a*), 7(1); 840 Code Mass. Regs. §§ 10.08, 10.10 (1993). In addition to the examination, the medical panel reviews "the pertinent facts in the case, and such other written and oral evidence as the applicant and the employer may present." G. L. c. 32, § 6(3)(*a*). "At the conclusion of [this process] . . . the panel shall certify to the [retirement] board in writing whether [the] physicians on [the] panel find [1] that [the employee] is mentally or physically incapacitated for further duty and [2] that such incapacity is likely to be permanent, and . . . shall state further [3] whether or not the disability is such as might be the natural and proximate result of the accident or hazard undergone on account of which retirement is claimed . . . ." *Id.* Certification of affirmative answers to all three questions is a "condition precedent" to accidental disability retirement. *Hunt* v. *Contributory Retirement Appeal Bd.*, 332 Mass. 625, 627 (1955). The medical panel or its individual members, see 840 Code Mass. Regs. § 10.10(2), (9) (1993), must also submit a separate narrative "describing in detail the findings and recommendations of the report," as well as responding to certain other questions as instructed on the certificate form. 840 Code Mass. Regs. § 10.10(9) (1993). It is the relationship between the statutory questions set out on the certificate(s) and the accompanying narrative(s) that is at issue here.

In this case, a regional medical panel was duly convened.

After each physician conducted a separate physical examination, each completed a "Regional Medical Panel Certificate" issued by the Division of Public Employee Retirement Administration (PERA) (now the Public Employee Retirement Administration Commission, see G. L. c. 7, § 49, as amended by St. 1996, c. 306, § 1). Each doctor also submitted a "narrative" in the form of a letter to PERA.

*The certificate form.* A "notice" on the second page of the medical panel certificate form used in this case provided that,

> "THE MEDICAL PANEL'S CERTIFICATE AND NARRATIVE ARE TO BE CONSIDERED AS EVIDENCE BY THE RETIREMENT BOARD. THEREFORE, IN ORDER TO ALLOW THE BOARD TO UNDERSTAND YOUR RESPONSES TO THE QUESTIONS, YOUR NARRATIVE REPORT SHOULD BE CLEAR, CONCISE AND CONSISTENT. A NARRATIVE REPORT WHICH DOES NOT FULLY SUPPORT THE CERTIFICATE RESPONSES MAY UNDERMINE THE WEIGHT OF THE MEDICAL PANEL REPORT."

The instructions on the subsequent pages of the certificate informed the panel members that they were "responsible for answering the questions listed in [s]ections (F), (G), and (H), in addition to providing a written response in the form of a narrative report which supports the medical basis for the conclusion." The sections labeled (F), (G), and (H) each included one of the three statutory determinations set out in G. L. c. 32, § 6(3)(*a*).

In addition to posing the first statutory question, section (F) of the form directed the doctor completing the certificate to "comment and discuss in the narrative: [t]he DIAGNOSIS of the [employee's] condition and the nature of any incapacity or impairment, if any, as found by the panel and the MEDICAL BASIS for your conclusion." Section (G) had similar questions concerning the expected course of the disability. Section (H) was captioned "CERTIFICATE FOR ACCIDENTAL DISABILITY." After setting out the third question, section (H) advised:

> "Before responding, please consider and also discuss in the narrative:

"A. Whether there is any other event or condition in the [employee's] history, or in any other evidence provided to the panel, other than the personal injury sustained or hazard undergone upon which the disability retirement is claimed, that might have contributed to or resulted in the disability claimed.

"B. Whether it is more likely than not that the disability was caused by the condition or event described in (A) rather than the personal injury sustained or hazard undergone which is the basis for the disability claim, and the basis for your conclusion."

Following this, the accidental disability certificate set out the third question again, this time with spaces in which to check "yes" or "no."

*Prior proceedings.* The panel unanimously answered the first two questions in the affirmative. As to the critical third question, two of the three doctors checked "no" on the certificate form. The State Board of Retirement voted to deny the employee's retirement "based on [the] report by the regional medical panel which conducted [the employee's] physical examination. . . . [The employee's] condition was not caused by or aggravated by [his] duties." See *Malden Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 1 Mass. App. Ct. 420, 423-424 (1973). The employee appealed to CRAB, which referred the matter to an administrative magistrate of the Division of Administrative Law Appeals. See G. L. c. 32, § 16(4). The magistrate held a hearing at which she received documentary evidence, heard argument, and considered the employee's claims. In affirming the decision of the retirement board, the magistrate stated that a majority of the single physician panel doctors had concluded that the employee had recovered from the January, 1993, injury to his right knee. In her five-page decision, she also observed that "Drs. Gibbons and Little both impl[ied] in clear, documented and logical narratives that the [employee's] serious underlying condition was not aggravated by the [January] fall." CRAB adopted the findings and decision of the magistrate, adding that "a majority of the Panel was of the . . . opinion, and the facts so indicate, that there was not a medical possibility of a causal relationship between [the

employee's] disability and an accident or hazard undergone while in the performance of his duties." Further appeal to the Superior Court was unsuccessful. See G. L. c. 30A, § 14(7).

*Issues on appeal.* On appeal to this court, the employee argues that the two members of the regional medical panel who answered the third question in the negative used the wrong legal standard in evaluating the impact of the accident. He claims that rather than determining whether the accident "might" have caused the employee's disability, these doctors instead gave definitive opinions on the ultimate question whether the accident actually played such a role. Relying on *Noone* v. *Contributory Retirement Appeal Bd.*, 34 Mass. App. Ct. 756, 762 (1993), the employee contends that the doctors acted in excess of their authority and that therefore the certificates, and CRAB's decision relying on them, were based on an error of law. G. L. c. 30A, § 14(7)(*c*).

*Standard of review.* It is the employee's burden to prove that he has a permanent and total disability that is "the natural and proximate result of a personal injury sustained as a result of the performance of his duties as [a diesel operator]." *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 479, 483 (1985). Consistent with well-established principles of administrative law, we give considerable deference to CRAB's expertise, according " 'great weight' to CRAB's interpretation and application of the statutory provisions it is charged with administering." *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. 246, 257 n.10 (1996), quoting from *Namay* v. *Contributory Retirement Appeal Bd.*, 19 Mass. App. Ct. 456, 463 (1985). In paying such deference, we are mindful that this is a "difficult area of the law," *Blanchette* v. *Contributory Retirement Appeal Bd.*, *supra* at 487, that is "notoriously complex." *Namay* v. *Contributory Retirement Appeal Bd.*, *supra.* See *Noone* v. *Contributory Retirement Appeal Bd.*, *supra* at 763 n.11.

*Discussion. Noone* v. *Contributory Retirement Appeal Bd.*, *supra*, on which the employee relies in support of his argument that there was an error of law, has not heretofore been cited for the particular principle the employee urges on us here. We therefore review *Noone* in some detail.

We begin with the procedural posture of that case. Paul Noone was a Superior Court probation officer who sought an accidental disability retirement on the ground that various manifestations of his heart disease were related to incidents at work. *Id.* at 756-757. The regional medical panel answered the third statutory question in the negative. The State Board of Retirement denied Noone's application. *Id.* at 758. On the employee's appeal to CRAB, an administrative magistrate made extensive findings of fact. She concluded there were three defects in the regional panel's certificate: reliance on risk factors, factual error related to one of the risk factors, and failure to consider a doctor's report (which the panel apparently did not have). She recommended that the case be remanded to a new medical panel. *Id.* at 760. CRAB purported to adopt the magistrate's findings of fact, but affirmed the decision of the retirement board. The Superior Court affirmed. *Id.* at 760-761. We reversed on two grounds: first, that the medical panel's answer to the third question was unsatisfactory; and second, that "the panel's reliance on 'risk factors' [did] not explain or justify its negative answer on causation" (footnote omitted). *Id.* at 762.

Thus, our decision in *Noone,* while reversing CRAB, essentially affirmed the findings of the administrative magistrate. Here, however, the employee's application has been rejected at every stage. There are important substantive distinctions as well.

In *Noone,* the medical panel answered the third question in the negative. The certificate "called upon the panel to state 'the medical basis for your conclusion.' . . . [I]n response to that instruction . . . the panel answered: 'predisposed to coronary heart disease by multiple risk factors; myocardial infarction was not work-related.' " (Footnote omitted.) *Id.* at 761. The *Noone* medical panel also sent a letter to the retirement board in which it stated the panel had "carefully considered the multiple risk factors which he [Noone] was predisposed to coronary heart disease [*sic*] and . . . concluded acute myocardial infarction was not work-related. The panel . . . therefore answered unanimously no to question three." *Id.* at 761-762. We characterized this response as "an unqualified certificate that [Noone's disability] was 'not work-related,' " *id.* at 761, and stated that

"[t]he panel ha[d] no statutory authority to express an unqualified negative opinion as to causation, and such an opinion, if expressed, [was] a nullity." *Id.* at 762, citing *Kelley* v. *Contributory Retirement Appeal Bd.*, 341 Mass. 611, 614-616 (1961). (In *Kelley*, "the certificate state[d] only the conclusion that there [was] no causal connection," 341 Mass. at 616, apparently without further discussion or elaboration.) We explained our conclusion in *Noone* as follows: "[The retirement] board is entitled to know whether, in the opinion of the panel, there is a medical *possibility* that the causal relation exists; absent such information, the [retirement] board lacks medical information that, with nonmedical facts presented to the board, provides the basis for the decision of the [retirement] board on the question of causation" (emphasis in original). *Noone* v. *Contributory Retirement Appeal Bd.*, 34 Mass. App. Ct. at 762. In this appeal, we conclude the employee is asking us to apply those words rather more literally than we think the court intended.

Before reviewing the documents in the case before us, we note that the instructions on the certificate form Noone submitted in 1989, *id.* at 758, were different from those on the form used five years later in this case. In *Noone*, "the introduction to the form state[d] that 'the panel should be as expansive as possible. A cursory statement may mitigate the weight of the panel's expert opinion.' " *Id.* at 761 n.8. A "notice" on the form submitted in the present case advised the panel that:

> "IN ORDER TO ALLOW THE [RETIREMENT] BOARD TO UNDERSTAND YOUR RESPONSES TO THE QUESTIONS, YOUR NARRATIVE REPORT[S] SHOULD BE CLEAR, CONCISE AND CONSISTENT. A NARRATIVE REPORT WHICH DOES NOT FULLY SUPPORT THE CERTIFICATE RESPONSES MAY UNDERMINE THE WEIGHT OF THE MEDICAL PANEL REPORT."

It appears that in *Noone*, the documents the medical panel submitted spoke only of risk factors. There was no discussion of the possibility that Noone's disability was the result of work-related incidents. We concluded that "[a] second, and indepen-

dent, ground for the legal insufficiency of the panel's certificate [was] the fact that the panel's reliance on 'risk factors' [did] not explain or justify its negative answer on causation" (footnote omitted). *Id.* at 762.

We think the import of *Noone* was that as far as one could tell from the certificate, the medical panel considered only the risk factors. There was nothing in the materials forwarded to the retirement board to suggest that the panel ever considered the relationship between the nature of the disability and the employee's job, or to explain why the panel determined there was no possibility of a connection between Noone's heart ailments and his work. That is not the situation here. Both doctors considered the role the January fall may have played in the employee's disability.

Dr. Gibbons reviewed the employee's history, set out his findings on physical examination, reviewed the reports submitted to the panel, and provided a lengthy paragraph of summary and conclusions in a three and one-half page letter. Gibbons stated his diagnosis that the employee has "severe traumatic arthritis of both knees and also is status post multiple surgical procedures of both knees." He then gave his opinion that "[i]n reference to the diagnosis as a result of the January [7], 1993 accident . . . he sprained his right knee and has recovered from this." After indicating his opinion that the employee was incapable of performing his job as the employee described, Gibbons expressed his further opinion that "[the employee's] disability [was] the result primarily of his traumatic arthritis that predated the . . . accident."

Dr. Little's narrative also clarified his reasons for answering the third question in the negative. Little's "diagnosis" made clear that he considered the accident to the employee's right knee: "Although [the employee] struck his knee and hyperflexed it on January 7, 1993, I do not believe that caused the progression of the degenerative changes, which are present in the right knee as well as in the left . . . . The contusion hyperflexion sprain [does] not appear to be responsible for his present situation, although . . . his knee did not need that additional insult, I believe his present situation is [a] consequence of [a] progression of degenerative changes in both knees, which go back many years."

While the significance of Dr. Gibbons's use of the word "primarily" is not entirely clear, the administrative magistrate determined that the employee had not met his burden of proof, in part because the doctors had found, by implication at least, that the accident did not aggravate the employee's condition. Upon review, CRAB concluded that the facts indicated "there was not a medical possibility of a causal relationship between [the employee's] disability and an accident or hazard undergone while in the performance of his duties." (The basis for the third doctor's opinion that the employee's disability "might be the natural and proximate result of [the January accident]" was the fact that before the accident the employee had been able to work despite his "very significant pre-existent . . . condition of both knees," whereas "he [had] been unable to return to work since [the accident].")

Although there is some force to the employee's claim of error, he did not carry his burden before CRAB of proving that he is entitled to an accidental disability retirement. Mindful of the deference due CRAB's interpretation and application of the statute, *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. at 257 n.10, we conclude that the certificates in this case do not suffer from the infirmity noted in *Noone*. The employee argues that the obligation of the doctors is to "determine the absence of the possibility of causation, not the absence of causation." While there is no requirement that the doctors repeat the words of the statutory standard, use of the words might emphasize the statutory focus, viz., "the disability is not such as might be the natural and proximate cause of the accident because . . . ."

Here the doctors answered the statutory questions as required. They also explained the reasons for their answers in the required discussion set forth in the narratives, which responded to the requests in the certificate forms. Dr. Gibbons concluded that the employee had recovered from the January, 1993, fall. Dr. Little noted that the knee injured in the fall was no more impaired than the other knee. Their responses considered the possibilities. They did not simply rely on a single statistical explanation without considering the alternatives, as was the case in *Noone*.

Finding no basis on which to reject CRAB's conclusions, we affirm the judgment of the Superior Court.

*So ordered.*