L. SHIRLEY NAMAY *vs.* CONTRIBUTORY RETIREMENT APPEAL
BOARD & others.[1]

Suffolk. March 13, 1984. — March 8, 1985.

Present: ARMSTRONG, CUTTER, & PERRETTA, JJ.

*Retirement. Contributory Retirement Appeal Board. Administrative Law,*
Judicial review, Agency's interpretation of statute. *Public Employment,*
Retirement, Accidental death benefits.

General Laws c. 32, § 9 (1), would permit the payment of death benefits to
the beneficiary of a public employee who, while a physician on duty at
a house of correction, suffered a disabling heart attack as the result of
a beating he received from an inmate and who, following his retirement
under G. L. c. 32, § 7, for accidental disability, died from a brain tumor
caused by the same traumatic incident. [458-460]
In deciding an appeal under G. L. c. 32, § 16 (4), by an applicant for public
employee death benefits the Contributory Retirement Appeal Board could
not properly defer to the finding of a city's retirement board as to cause
of death, but was required to make its own determination after a fact-find-
ing hearing in accordance with the State Administrative Procedure Act.
[461-462]
Where a matter was to be remanded to the Contributory Retirement Appeal
Board for a finding as to the cause of death of a public employee who
had been a member of three retirement systems, this court exercised its
discretion to permit the employee's beneficiary to raise the contention,
which she had not previously raised before either the board or the review-
ing court, that, under G. L. c. 32, § 3 (7) (*b*), as in effect prior to St.
1982, c. 630, § 11, two of the three retirement boards were required to
allow death benefits upon the decision of the third board to do so.
[462-463]

CIVIL ACTION commenced in the Superior Court Department
on June 29, 1979.

The case was heard by *Irving Goldblatt,* J., sitting under
statutory authority.

*S. James Boumil* for the plaintiff.

[1] State Board of Retirement and Lowell board of retirement.

*William H. Carroll,* Special Assistant Attorney General, for Contributory Retirement Appeal Board.

ARMSTRONG, J. The plaintiff's husband, Dr. N. Richard Namay, served as a physician for the city of Lowell, the county of Middlesex, and the Commonwealth. In 1971, while on duty at the Billerica house of correction, Dr. Namay was beaten by an inmate, and he subsequently suffered a disabling heart attack. Finding that the beating caused the heart attack, the Lowell, Middlesex, and State retirement boards granted him accidental disability retirement benefits under G. L. c. 32, § 7.

Dr. Namay died in 1974 as a result of a malignant brain tumor, and his widow applied to the Lowell, Middlesex, and State retirement boards for death benefits under G. L. c. 32, § 9. The Middlesex board found that the prison beating caused the tumor and awarded benefits under § 9. The Lowell board apparently found that the beating and the tumor were not causally related[2] and denied the request. The State board also denied the request, although it did not reach the issue of causation. Instead, it interpreted G. L. c. 32, § 9(1),[3] to preclude death benefits when, as in this case, the medical condition causing death (i.e. the brain tumor) differs from the medical condition which caused retirement (i.e. the heart attack). Mrs. Namay's appeal from the two adverse findings to the Contributory Retirement Appeal Board (appeal board) was heard by a hearings officer (see G. L. c. 32, § 16[4]), who concluded that the evidence bearing on the question of causal connection justified a finding either way and, on that basis, recommended deferring to the negative finding of the Lowell board. He disagreed,

[2] The hearings officer's proposed decision and the final decision of the Contributory Retirement Appeal Board each stated that the basis of the Lowell board's decision was a finding to the effect stated. The record does not disclose the source of their information. The Lowell board has not appeared in the Superior Court or in this court.

[3] Section 9(1), as appearing in St. 1945, c. 658, § 1, states in relevant part that "[t]he provisions of this section [i.e., providing for accidental death benefits] shall apply although such member had previously been retired for accidental disability if the board finds that such death was the natural and proximate result of *the injury or hazard on account of which such member was retired*" (emphasis supplied).

however, with the State board's interpretation of G. L. c. 32, § 9(1), and recommended remanding the case to the State board for a determination by it whether the beating caused the tumor.

The appeal board disagreed, expressing its own, somewhat enigmatic, view to the following effect: The State board was not incorrect in adopting a "precise reading" of § 9(1), under which Dr. Namay's widow would not be entitled to accidental death benefits under § 9 because the cause of death was different from the condition that underlay the award of accidental disability retirement benefits under § 7. The appeal board felt that it need not determine whether it was permissible for the Lowell board to adopt "a more lenient reading of [§ 9(1)]," because "[s]ufficient doubt was raised in the medical opinions of the causal relationship between a blow and the later development of a malignant tumor for Lowell to reject the request on that basis." The appeal board thus affirmed the decisions of both the State and Lowell boards denying accidental death benefits.[4] Here, it is worth noting that neither the hearings officer's approach nor that of the appeal board called for or resulted in an independent finding based on the evidence received by the hearings officer as to the relationship, if any, between the malignancy that caused Dr. Namay's death and the beating he had suffered at the hands of the inmate three years before.

We first consider the interpretation given by the State board to § 9(1), because, if correct, accidental death benefits would be barred in Dr. Namay's case by reason of the statute, and there would be no reason to inquire into the causal relationship, if any, between the beating and his death. Statutory precursors of today's § 9(1) provided for death benefits where the death of the employee stemmed from (in various forms of language) an accident or a hazard occurring on the job. See, e.g., G. L. c. 32, § 2(10) and (11), as appearing in St. 1935, c. 390; § 25B, inserted by St. 1936, c. 400, § 1; § 31B, inserted by

---

[4] The case went to the Superior Court on an appeal under G. L. c. 30A, § 14, and both parties have appealed from its dispositions. As the case was heard on the agency record, this court stands in the same position as the Superior Court.

St. 1936, c. 318, § 1. Comparable standards controlled acciden-
tal disability retirement benefits (today, G. L. c. 32, § 7[1]).
Accidental death or disability benefits were not payable where
the death or disability was not "traceable to [an] accident or
hazard . . . . A disease of the mind or body that arose in the
course of his employment, but was not attributable to such
accident or hazard, would not entitle the member to [benefits]
. . . ."[5] *Hough* v. *Contributory Retirement Appeal Bd.,* 309
Mass. 534, 538 (1941).

By 1945, when the separate statutory schemes relating to
the State, county, and municipal retirement systems were con-
solidated into one (St. 1945, c. 658, § 1), the test for "acciden-
tal death benefits" was cast in its present form. "Accident"
had been replaced by "injury," and the test was whether the
member died as the natural and proximate result of "a personal
injury sustained or a hazard undergone as a result of, and while
in the performance of, his duties at some definite place and at
some definite time." G. L. c. 32, § 9[1]. The effect of that
change was to extend coverage to include deaths resulting from
job-related causes regardless of whether the causes were acci-
dental. *Baruffaldi* v. *Contributory Retirement Appeal Bd.,* 337
Mass. 495, 500-501 (1958). Under § 9(1) as revised, the test
became analogous to the arising-out-of-employment test for
workers' compensation eligibility. *Ibid. Zavaglia* v. *Contribu-
tory Retirement Appeal Bd.,* 345 Mass. 483, 486 (1963) (re-
lating to the identical phraseology in § 7[1]). The purpose of
the change was to broaden coverage. *Id.* at 487. See *Buteau*
v. *Norfolk County Retirement Bd.,* 8 Mass. App. Ct. 391,
393-394 (1979).

Under the present, broadened formulation of § 9(1), there
can be no doubt that Dr. Namay's death, if his brain tumor
resulted from the beating, was the result of a personal injury
sustained or a hazard undergone within the meaning of that

---

[5] "An accident is an unexpected, untoward event which happens without
intention or design, and a hazard is a danger or risk lurking in a situation
which by chance or fortuity develops into an active agency of harm." *Hough*
v. *Contributory Retirement Appeal Bd.,* 309 Mass. 534, 539 (1941), and
cases cited.

section. Assuming the causal connection, his widow would be entitled to receive accidental death benefits if Dr. Namay had not previously been retired under § 7 for the heart condition, but had instead been a member in service at the time of his death.[6]

We do not think it is consistent with the liberalizing purpose of the Legislature to interpret the last sentence of § 9(1) (see note 3, *supra*) to preclude death benefits in a case where the same traumatic incident at work produces two distinct physical impairments, one of which is immediately disabling and the other of which causes death. The words "personal injury" are not necessarily to be equated with the physical impairment (or impairments) caused by the traumatic incident. The Legislature's purpose in substituting the words "personal injury" for "accident" was to encompass on-the-job impacts, particularly those of a repetitive or cumulative nature, which could not comfortably be described as accidental. See *Zavaglia* v. *Contributory Retirement Appeal Bd.*, 345 Mass. at 485-486. The term was meant to be functionally equivalent to the term "accident" but broader in its reach. This is not a strained interpretation. The word "injury" is appropriately used to describe "an act that damages or hurts," as well as the "hurt, damage, or loss sustained." Webster's Seventh New Collegiate Dictionary 435 (1972). In the case of Dr. Namay, it was, in our view, the inmate's assault on Dr. Namay which was the physical injury described by § 9(1). If that injury in fact resulted not only in the heart attack, which caused disability, but also in the brain tumor which caused his death, his widow is entitled to "accidental death benefits"[7] under the provisions of § 9.

---

[6] There is no necessity in this case to consider the broader question whether the dependents of a former member in service are eligible for benefits under § 9(1), without reference to the final sentence of that subsection, where the former member's death is causally related to a personal injury or hazard of the job. See G. L. c. 32, § 3(1)(c); *Gannon* v. *Contributory Retirement Appeal Bd.*, 338 Mass. 628 (1959); *Boston Retirement Bd.* v. *McCormick*, 345 Mass. 692 (1963); *State Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 12 Mass. App. Ct. 306 (1981).

[7] The word "accidental" has, of course, been a misnomer since the Legislature substituted "personal injury" for "accident," but the title has remained in the statute. See *Baruffaldi* v. *Contributory Retirement Appeal Bd.*, 337 Mass. at 501.

The question remains, then: Was there a causal connection between the beating and the brain tumor? The State board made no finding one way or the other, resting its decision instead on an erroneous view of the law. The Lowell board is said to have found there was no such connection (see note 2, *supra*), although the record does not show an express finding to that effect. The appeal board deferred to the Lowell board's negative finding because, in the face of evidence supporting a finding either way, the negative finding could not be called erroneous.

The approach of the appeal board shows a fundamental misunderstanding of the legislatively established administrative process. After an appeal reaches the appeal board, the findings of the retirement board are of no particular significance; it is those of the appeal board which, if supported by substantial evidence, will be determinative. See, e.g., *State Bd. of Retirement* v. *Contributory Retirement Appeal Bd.,* 342 Mass. 58, 60-61 (1961); *Teachers' Retirement Bd.* v. *Contributory Retirement Appeal Bd.,* 346 Mass. 663 (1964); *Easthampton Contributory Retirement Bd.* v. *Contributory Retirement Appeal Bd.,* 347 Mass. 777 (1964); *Methuen Retirement Bd.* v. *Contributory Retirement Appeal Bd.,* 384 Mass. 797 (1981). The applicant for benefits has no right to a hearing before the retirement boards, see *Masiello* v. *Contributory Retirement Appeal Bd.,* 360 Mass. 856, 857 (1971), and c. 32 makes no provision for judicial review of their decisions. *Buteau* v. *Norfolk County Retirement Bd.,* 8 Mass. App. Ct. at 392. The avenue of appeal is administrative, *id.* at 393; and, after an appeal is claimed, § 16(4) requires that the appeal board, through a hearings officer, accord a fact-finding hearing. *Vinal* v. *Contributory Retirement Appeal Bd.,* 13 Mass. App. Ct. 85, 93-94 (1982). That hearing is adjudicatory under G. L. c. 30A, § 1(1), *id.* at 91; it must be conducted in accordance with the requirements of G. L. c. 30A, §§ 10 and 11. The board must make findings (§ 11[8]), *id.* at 92; the findings must be supported by substantial evidence on the record (§ 14[7][e]). *Quincy Retirement Bd.* v. *Contributory Retirement Appeal Bd.,* 340 Mass. 56, 61 (1959). *State Bd. of Retire-*

ment v. *Contributory Retirement Appeal Bd., supra. Maddocks*
v. *Contributory Retirement Appeal Bd.,* 369 Mass. 488, 495
(1976). The decision which must withstand judicial review
under G. L. c. 30A, § 14, is that of the appeal board, not that
of the State, county, or local retirement board.[8] See *McCarthy*
v. *Contributory Retirement Appeal Bd.,* 342 Mass. 45, 47, 48
(1961). No purpose is served by a remand to a retirement
board.[9] The remand for the crucial but missing finding must
be to the appeal board. Compare *Zavaglia* v. *Contributory
Retirement Appeal Bd.,* 345 Mass. at 487; *Shrewsbury Retire-
ment Bd.* v. *Contributory Retirement Appeal Bd.,* 5 Mass.
App. Ct. 379, 382, 383 (1977); *Vinal* v. *Contributory Retire-
ment Appeal Bd.,* 13 Mass. App. Ct. at 101-102.

Mrs. Namay makes the further contention that, under G. L.
c. 32, § 3(7)(*b*), as in effect prior to St. 1982, c. 630, § 11
("if any pension or retirement allowance becomes effective on
account of any . . . person's membership in one [retirement]

---

[8] We do not read *Wakefield Contributory Retirement Bd.* v. *Contributory
Retirement Appeal Bd.,* 352 Mass. 499, 502 and 503 (1967), as holding
that the appeal board's role is more limited. The crux of that decision was,
we think, that the applicant for accidental disability retirement benefits
failed to introduce any evidence before the appeal board which could have
been the basis for a finding that his disabling pulmonary condition was the
result of the single exposure to smoke inhalation in July, 1960. *Id.* at 503.
The applicant had the burden of proving such a causal connection. *Id.* at
502. The applicant lost not because there was evidence to support the
retirement board's denial of benefits but because there was no substantial
evidence to support the appeal board's allowance of benefits. Compare
*State Bd. of Retirement* v. *Contributory Retirement Appeal Bd.,* 342 Mass.
at 60-61, 65-66. A contrary reading would be incompatible with the appeal
board's de novo fact-finding role mandated by G. L. c. 32, § 16(4), and
G. L. c. 30A, §§ 1(1), 10, and 11. See *Masiello* v. *Contributory Retirement
Appeal Bd.,* 360 Mass. at 857; *Vinal* v. *Contributory Retirement Appeal
Bd.,* 13 Mass. App. Ct. at 91-93.

[9] *Kelley* v. *Contributory Retirement Appeal Bd.,* 341 Mass. 611, 618
(1961), ordered remand by the appeal board to a retirement board, but the
reason for that unusual action was that the regional medical panel constituted
under G. L. c. 32, § 6(3)(*a*), had failed to present to the retirement board
a certificate in the form required by that section. *Id.* at 613. That certificate,.
when not tainted by error of law, has independent legal significance as
discussed in the *Kelley* case, at 616-617, and in *Malden Retirement Bd.* v.
*Contributory Retirement Appeal Bd.,* 1 Mass. App. Ct. 420, 423-425 (1973).

system [where he is a member of two or more such systems], a pension or retirement allowance shall also become effective for the same reason and at the same time on account of his membership in any other system"), the State and Lowell retirement boards were required to allow accidental death benefits under § 9 upon the decision of the Middlesex retirement board to do so. Because this issue was not raised before the appeal board or the Superior Court, Mrs. Namay may not raise it on appeal as of right. *Albert* v. *Municipal Court of the City of Boston,* 388 Mass. 491, 493-494 (1983). *Therrien* v. *Labor Relations Commn.,* 390 Mass. 644, 647-648 (1983). *Gurry* v. *Board of Pub. Accountancy,* 394 Mass. 118, 125-126 (1985). Nevertheless, because the case must be remanded to the appeal board for other reasons, we exercise our discretion to permit Mrs. Namay to raise the contention before the appeal board at this time. The application of this provision of § 3(7)(*b*) is by no means free from doubt, and we have neither found nor been directed by the parties to any cases interpreting it. Indeed, the brief filed on behalf of the appeal board makes no mention of the contention. The retirement law is notoriously complex, and, in construing the effect of the provision in question, the court would hope to have the benefit of the experience of the appeal board. Courts look for and will normally accord great weight to an administrative agency's interpretation — particularly if long standing — of the law which the agency is charged to administer. *Cleary* v. *Cardullo's, Inc.,* 347 Mass. 337, 343-344 (1964). *School Comm. of Springfield* v. *Board of Educ.,* 362 Mass. 417, 441, n.22 (1972). *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 850 (1977). *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.,* 376 Mass. 480, 491-492 (1978).[10]

The judgments are reversed. The case is remanded to the Superior Court, where an order is to enter recommitting the case to the appeal board for a finding whether the malignant

---

[10] A decision for the plaintiff at this point would, of course, obviate the need for a finding on causal connection; but the remand order should provide for the appeal board's addressing both points to avoid the necessity of a further remand.

brain tumor which caused Dr. Namay's death was (in the words of G. L. c. 32, § 9[1]) "the natural and proximate result of" the beating which he sustained at the hands of the prisoner in December, 1971. The appeal board shall have discretion to make the finding on the present record or to recommit the case to the hearings officer for the taking of additional evidence. The appeal board should also consider the effect, if any, of G. L. c. 32, § 3(7)(*b*), on this case and should explain in its amended decision the reasons for its interpretation. The Superior Court shall fix a time limit for the return and shall retain jurisdiction.

*So ordered.*