STANLEY FEDORCHUK *vs.* CONTRIBUTORY RETIREMENT APPEAL BOARD & another.[1] No. 87-677. June 28, 1988. *Retirement. Contributory Retirement Appeal Board. Statute,* Construction. *Public Employment,* Accidental disability retirement. *Words,* "Personal injury." "Accident."

Fedorchuk (the applicant), a Boston police officer, requested accidental disability retirement under G. L. c. 32, § 7(1), on April 2, 1982. He was then one month short of reaching age sixty-five (date of birth, May 3, 1917). He had been appointed to be a police officer on June 21, 1950, and performed foot patrol until June 11, 1967. On that day, the applicant suffered (in connection with unusual exertion while on duty) a myocardial infarction although he had no previous record of heart problems. He returned to work

---

[1] The Boston retirement board.

in May, 1968, was placed on "light duty," and remained able to perform all his *assigned* police duties, which were largely clerical. On January 8, 1979, the applicant suffered heart, neck, and back pain as a result of a "patrol car" accident in the course of his police duties.

A medical panel, convened on August 31, 1982, examined the applicant and concluded in effect (1) that he was "substantially unable to perform all the duties of [a] police officer and so [is] a person . . . physically incapacitated for further duty as such," (2) that "recovery is not reasonably certain within a fairly definite time so that . . . disability is likely to be permanent," and (3) that the claimed "disability [is] such as might be the natural and proximate result of the accident or hazard undergone on account of which retirement is claimed" by the applicant. There was a separate certificate by the panel that there was no competent evidence to offset the presumption (G. L. c. 32, § 94) that the applicant's heart trouble had been incurred in the line of duty.

The Boston retirement board denied the applicant's request for accidental disability retirement. From this denial the applicant claimed an appeal to the Contributory Retirement Appeal Board (CRAB). There the matter was heard de novo, see *Namay* v. *Contributory Retirement Appeal Bd.*, 19 Mass. App. Ct. 456, 461-462 (1985), and authorities cited, before an administrative magistrate who found the facts essentially as stated above and recommended to CRAB a decision which CRAB adopted as its own. Included in the specific findings of fact thus adopted by CRAB were (emphasis supplied): "5. Subsequent to June 11, 1967, the . . . [applicant] was placed on 'light duty' [largely clerical work] but was fully able to perform his *assigned* duties, and remained on such [light duty] until his retirement on April 2, 1982," and "10. . . . [The applicant] was permanently incapacitated for duty before attaining the maximum retirement age for his group." These findings were expanded in the "conclusion" of the decision adopted by CRAB.

The decision of CRAB rested squarely upon the provision (hereafter usually referred to as the 1949 prohibition) of G. L. c. 32, § 7(1), see the statutory appendix, *infra*, following the bracketed letter [U]. The CRAB decision viewed the 1949 prohibition as preventing a person in the applicant's "group from being awarded accidental disability retirement benefits within two years of attaining the maximum age for his group if the accident or hazard occurred [more than] three years prior to his obtaining the maximum age for his group." The administrative magistrate and the members of CRAB thus each read the 1949 prohibition as meaning just what in ordinary usage its language seems to mean.

The applicant on June 12, 1985, sought judicial review of CRAB's decision under G. L. c. 30A, § 14. On March 30, 1987, a District Court judge, sitting by statutory authority in the Superior Court, affirmed CRAB's decision on the ground that the pertinent language of the 1949 prohibition in § 7(1) showed no "[legislative] intention to distinguish between injuries

that are caused by accidents and those which are caused by something other than an 'accident.' " He thus rejected, as we do, a very complicated contention in behalf of the applicant, which necessarily must rest largely on the legislative and decisional history of § 7(1) and related portions of c. 32.

That legislative history of these sections of c. 32 has been discussed very fully. See, e.g., *Baruffaldi* v. *Contributory Retirement Appeal Bd.*, 337 Mass. 495, 500-501 (1958), reviewing closely similar provisions of c. 32, § 9(1); *Zavaglia* v. *Contributory Retirement Appeal Bd.*, 345 Mass. 483, 487 (1963); *Campbell* v. *Contributory Retirement Appeal Bd.*, 17 Mass. App. Ct. 1018, 1019 (1984). As was said in the *Namay* case, 19 Mass. App. Ct. at 463, "The retirement law [c. 32] is notoriously complex." Much of that complexity grows out of the change (see St. 1945, c. 658, § 1, inserting new forms of the sections here pertinent) to "personal injury" as used in later revisions of c. 32 as contrasted with "accident" as used in earlier drafts of c. 32. That distinction was discussed in the *Baruffaldi* case, 337 Mass. at 500-501, as adopting, at least for some purposes of c. 32, essentially the broad view set forth in the workers' compensation law (G. L. c. 152) of the words "personal injury."

We have been referred to no court decision recognizing, for the purposes of the 1949 prohibition, any distinction between (a) disabilities coming within the words "personal injury sustained or a hazard undergone" as used in the first sentence of § 7(1), and (b) the words "accident or hazard undergone" used in the 1949 prohibition, later in § 7(1). See the quotation in the statutory appendix, *infra*, of the pertinent language of § 7(1), viz., *first*, that following bracketed letters [U] and [V], and, *second*, that following letters [Y] and [Z]. The 1949 prohibition is explicit as barring retirement under § 7(1) if the words of the 1949 prohibition are interpreted in accordance with what we, CRAB, and the trial judge think was their meaning in context.

We have not found (or been referred to) any legislative history which explains the precise legislative purpose of the 1949 prohibition. The brief filed by the Attorney General (in behalf of CRAB) suggests that the "clear intent . . . [was] to bar all . . . retirement applications [under § 7(1)] made within two years of the member's [attaining his] maximum age and that are based upon injuries . . . received more than three years prior to" the attaining by an applicant of that maximum age. The preparer of the CRAB brief also infers that the 1949 bill was designed "to safeguard against" false applications and the use of old injuries improperly to obtain extra benefits under § 7(1). This is one reasonable inference. Another reasonable inference is that the draftsman of the 1949 prohibition by inadvertence or mistake used a possibly less inclusive term in the 1949 legislative bill than might have been appropriate to accomplish what seems a likely legislative purpose. That draftsman, of course, did not have the benefit of the reasoning in the 1958 *Baruffaldi* case and may have placed undue reliance on language in *Hough* v. *Contributory Retirement Appeal Bd.*, 309 Mass. 534, 537-540 (1941).

In any event, the applicant in the present case has long treated the heart difficulties (from which he has suffered since 1967), as originating from the overexertion in the course of his duties on a particular occasion in 1967 and as aggravated by the 1979 patrol car incident. These incidents (each more than three years prior to his application for retirement) certainly gave rise to his being kept (presumably at full pay) on "light duty" status. Each incident comes within the precise definition of "accident" in the 1949 prohibition of payment of benefits under § 7(1).

We have not been furnished with any adequately conclusive proof of what has been the long term administrative construction of the 1949 prohibition (by CRAB and other agencies charged with administering it). We note, however, that the Boston retirement board contends that the construction has been consistent with the view which we take below, see the *Namay* case, 19 Mass. App. Ct. at 463.

We take into account all the circumstances just mentioned. We also consider what we know of the legislative history of the 1949 prohibition and the context in which it was enacted. We read together all the pertinent provisions of c. 32, § 6(3), and § 7(1). We observe no indication of any explicit legislative intention to impose upon State and other public bodies maintaining police forces the fiscal burdens (and the administrative complexity) which this applicant's interpretation of the 1949 prohibition would require. We think that the most reasonable interpretation, see *Attorney Gen.* v. *School Committee of Essex*, 387 Mass. 326, 336-337 (1982), of the 1949 prohibition requires that benefits under § 7(1) be denied.

*Judgment affirmed.*


STATUTORY APPENDIX.


The provisions of G. L. c. 32, quoted, summarized, or mentioned below, unless otherwise indicated, are stated as in effect on April 2, 1982, the date of the applicant's request for disability retirement under § 7(1). All emphasis is supplied. Capital letters in brackets have been inserted for convenience in referring to the language immediately following such letters respectively. The comprehensive revision of parts of G. L. c. 32, made by St. 1982, c. 680, by virtue of § 56 of that statute, did not become effective until July 1, 1983.

A. *Section 6(3)(a)*, first sentence, then read in pertinent part: "No member shall be retired for disability under the provisions of this section *or of section seven* unless he has first been examined by a medical panel and unless a majority of the physicians on such medical panel shall, after such examination and after a review of all of the pertinent facts in the case, certify to the board in writing that such member is mentally or physically incapacitated for further duty and that such incapacity is likely to be permanent, and [M], in *any case* involving a retirement under *section seven*, the panel shall further

state whether or not the disability is such as might be [N] *the natural and proximate result* of the *accident or hazard undergone* on account of which such retirement is claimed under said section." Then follows a statement of the method of selecting the medical panel.

It should be noticed that the words following the bracketed letters [M] and [N] were inserted by St. 1946, c. 603, § 2, long after the language of what is now § 7(1) had been changed to use the language "personal injury or a hazard undergone." This suggests that the draftsman of the 1946 act (as well as the draftsman of the 1949 prohibition, see *infra*) may have failed to appreciate the broadened effect of the words "personal injury" in § 7(1) as contrasted with the words "accident or hazard undergone" and may have been using the terms interchangeably.

B. *Section 7(1)* then read in pertinent part: "Any member . . . who becomes totally and permanently incapacitated for further duty before attaining the maximum age for his group *by reason of* [U] *a personal injury sustained* or [V] *a hazard undergone* as a result of, and in the performance of, his duties [W] at some definite place . . . shall be retired for accidental disability . . . . [X] No such retirement shall be allowed within any period of two years prior to attaining the maximum age on account of [Y] *any accident or hazard undergone* except for [Z] *an accident or hazard undergone* within three years of attaining such maximum age . . . ." All the material (i.e., the 1949 prohibition) following the bracketed letter [X] was inserted in § 7(1) by St. 1949, c. 618, § 4, which was prior to the first "heart law" adopted in 1950, and to the 1958 decision in the *Baruffaldi* case, 337 Mass. at 495.

C. *Section 94* (the so called "heart law") was first added to c. 32, by St. 1950, c. 551, with respect to firemen, and was extended to police officers by St. 1951, c. 594. It has been further extended in later years.

*Steven M. Guiney* for the plaintiff.

*Mark P. Sutliff,* Assistant Attorney General, for Contributory Retirement Appeal Board.

*Nicholas Poser,* Special Assistant Corporation Counsel, for Boston Retirement Board.