GERALDINE DUNN *vs.* CONTRIBUTORY RETIREMENT APPEAL
BOARD & others.[1]

No. 97-P-549.

Plymouth. April 13, 1998. - February 22, 1999.

Present: ARMSTRONG, LENK, & BECK, JJ.

*Contributory Retirement Appeal Board. Administrative Law,* Hearing. *Retirement. Words,* "Living apart for justifiable cause."

The Contributory Retirement Appeal Board erred in ruling that the administrative magistrate was bound by the findings of the local retirement board in circumstances in which the parties had submitted the case for decision to the magistrate on the record before the board: the matter was remanded to the board for reconsideration or recommittal. [363-364, 365]

Discussion of the phrase "living apart for justifiable cause," found in G. L. c. 32, § 12(2)(*d*). [364-365]

CIVIL ACTION commenced in the Superior Court Department on January 4, 1995.

The case was heard by *John J. O'Brien,* J.

*Donald H. Jackson, Jr.,* for the plaintiff.

*Michael Sacco* for Plymouth County Retirement Board.

*Thomas C. Cameron* for Shelby Reno.

*Kristin E. McIntosh,* Assistant Attorney General, for Contributory Retirement Appeal Board.

ARMSTRONG, J. John Dunn (Dunn), a Plymouth County correctional case worker, died in 1992 of lung cancer. Five months before his death, he had filed a change of beneficiary form with the Plymouth County retirement board (Plymouth board), intended to exclude his wife, Geraldine Dunn (who had left him in September, 1989, and had in 1991 retained an attorney to institute divorce proceedings), in favor of Shelby Reno, whom Dunn listed as his fiancée. Both women filed claims with the

---

[1]Plymouth County Retirement Board and Shelby Reno.

Plymouth board for benefits (in this case, a return of John Dunn's total accumulated contributions, with interest). The case is before us on an appeal by Geraldine Dunn from a judgment affirming the decision of the Contributory Retirement Appeal Board (CRAB) in favor of Shelby Reno. We reverse the judgment because the CRAB decision was based on an erroneous legal standard.

Shelby Reno's claim was based on Dunn's designation of her as his beneficiary. Geraldine Dunn's claim was based on G. L. c. 32, § 12(2)(*d*), as appearing in St. 1972, c. 743, § 1, which gives a surviving spouse the right to claim as the retirement beneficiary, "provided, that said spouse and the deceased member [of the retirement system] were living together at the time of death of such member, or that the board finds that they had been living apart for justifiable cause other than desertion or moral turpitude on the part of the spouse." She acknowledged that she was living apart from Dunn but claimed that it was for a justifiable cause: namely, that Dunn had been having an adulterous, homosexual relationship with a friend, Larry ____.

The conflicting claims were heard by the Plymouth board. The evidence for Geraldine Dunn consisted primarily of her own testimony. While acknowledging that she had never caught the two men in flagrante delicto, she based her inference as to the affair on long periods of estrangement, an aggregation of incidents of suspicious behavior involving personal hygiene and undergarments, a succession of clues that convinced Geraldine Dunn her husband was spending inordinate amounts of time with Larry ____, and various remarks by her husband suggestive of an obsession with homosexual behavior. The evidence for Shelby Reno consisted, most importantly, of the testimony of Larry ____, who denied having engaged in a homosexual affair with Dunn and, beyond that, testified that he had been (and still was) happily married to his wife of thirty-four years and that his relationship with Dunn was only that he was one of a number of boat owners who, like Larry ____, spent substantial amounts of time hanging around the Scituate docks; and of the testimony of Shelby Reno, who attested to Dunn's heterosexuality. She also described the period of his final illness and her care of him during that time; and, she and one Thomas Donohue, a close friend of Dunn's, described the steps taken by Dunn in his closing months to rearrange his affairs to ensure that his house and his pension benefits would go to Shelby

Reno rather than to his wife Geraldine. Having heard these witnesses and several others whose testimony was marginally relevant, and having received the affidavits of two other relatively tangential witnesses, the five members of the Plymouth board, without explanation, voted unanimously to return Dunn's accumulated contributions to Shelby Reno as Dunn's named beneficiary.

Geraldine Dunn appealed the Plymouth board's adverse decision to CRAB, before which she was statutorily entitled to a de novo fact-finding hearing. See G. L. c. 32, § 16(4), second par., as amended by St. 1990, c. 331; *Namay* v. *Contributory Retirement Appeal Bd.*, 19 Mass. App. Ct. 456, 461-462 (1985). Under the statute, the de novo hearing is conducted by a hearing officer ("administrative magistrate") assigned by the Division of Administrative Law Appeals, G. L. c. 7, § 4H, as amended by St. 1983, c. 683, whose decision is final unless a party seeks review by CRAB's three-member board. See § 16(4), second par. See generally *Vinal* v. *Contributory Retirement Appeal Bd.*, 13 Mass. App. Ct. 85, 93-94 (1982). In this case, the appeal was assigned to an administrative magistrate who was prepared to conduct a full evidentiary hearing; the parties agreed, however, not to present live witnesses but instead to submit the case for decision by the administrative magistrate on the transcript of evidence and exhibits that had been before the Plymouth board. This was, in effect, the submission of the case for decision on an agreed statement of the evidence, see *Frati* v. *Jannini*, 226 Mass. 430, 431-432 (1917), empowering the administrative magistrate to make her findings of fact on her evaluation of the evidence therein just as she would have done if the same evidence had been adduced through testimony. See *id.* at 431; *Commonwealth* v. *Triplett*, 398 Mass. 561, 570 (1986). The administrative magistrate did exactly that, entering extensive findings wherein she credited the testimony of Geraldine Dunn as to all or nearly all of the various clues from which Geraldine Dunn had drawn the inference that her husband was engaged surreptitiously in a homosexual liaison. "The issue in this appeal," the administrative magistrate concluded, "is whether the fact that Ms. Dunn reasonably believed that her husband was bisexual and committing adultery provides justifiable cause for living apart." The administrative magistrate

answered the question affirmatively,[2] based on her conclusion that "[d]uring the [relevant] time period . . . there was objective evidence to support Ms. Dunn's suspicions that [her husband] was engaging in homosexual, adulterous encounters." The administrative magistrate's conclusion, in other words, was that Geraldine Dunn's suspicions were genuine and well founded; she did not go further to find that they were also true. The administrative magistrate ordered that the accumulated contributions be returned to Geraldine Dunn.

Shelby Reno sought review of the decision by CRAB's three-member appeal board[3] which took the following view of the case: Only eleven of the administrative magistrate's forty-two subsidiary findings were based on the documentary exhibits put in evidence before the Plymouth board. The other thirty-one subsidiary findings were based on the testimonial transcript from that board, from which the administrative magistrate, CRAB reasoned, had made findings contrary to those made by the Plymouth board. The Plymouth board had heard the witnesses live and thus had been in a better position to assess their credibility; accordingly, under the decisional law (CRAB here cited *Vinal* v. *Contributory Retirement Appeal Bd.*, 13 Mass. App. Ct. at 97), CRAB concluded that the administrative magistrate could not make findings from a printed transcript contrary to those made by the Plymouth board. Following that reasoning, CRAB adopted the eleven findings based on the documentary exhibits and struck all thirty-one findings based on the testimonial transcript. Then, reasoning that the burden of proof lay on Geraldine Dunn as the one appealing the decision of the Plymouth board, CRAB ruled that the eleven summary findings (which were incoherent taken out of their testimonial context) did not suffice to show that the Plymouth board had erred in finding for Shelby Reno. On that basis, CRAB affirmed

[2]"The answer must be yes. Ms. Dunn believed that her husband was having homosexual encounters, that he was committing adultery. Adultery is a cause for which divorce may be adjudged under G. L. c. 208, § 1, and certainly provides a basis for living apart."

[3]General Laws c. 32, § 16(4), second par., provides that the decision of the administrative magistrate "shall be final and binding on the [local] board . . . and upon all other parties, . . . unless within fifteen days after such decision . . . either party objects to such decision, in writing, to [CRAB]," in which event "[CRAB] shall then pass upon the appeal within six months after the conclusion of such hearing, and its decision shall be final and binding upon the [local] board involved and upon all other parties."

the decision of the Plymouth board. Geraldine Dunn appealed to the Superior Court, which affirmed CRAB's decision, giving (the judge explained) "due weight to [CRAB's] experience, technical competence and specialized knowledge . . . as well as the discretionary authority conferred upon it."

The rationale employed by CRAB and approved, implicitly, by the judge was legally erroneous and cannot stand. The reasons are two: First, CRAB misapplied the teaching of the *Vinal* case in a manner that deprived the appellant, Geraldine Dunn, of her right to a de novo fact-finding hearing before CRAB, acting in the first instance through the administrative magistrate. The parties' election to forgo live witness testimony and instead to try the case on a statement of the evidence cannot properly be interpreted as a concession on the appellant's part that the local board's findings based on live witness testimony were to bind CRAB. The *Vinal* decision concerned the review by CRAB of the findings of its administrative magistrate (13 Mass. App. Ct. at 95-96), not the review of the findings made by the local board. Any findings made by a local board were "of no particular significance" before CRAB. *Namay* v. *Contributory Retirement Appeal Bd.*, 19 Mass. App. Ct. at 461. "The decision which must withstand judicial review . . . is that of [CRAB], not that of the . . . local retirement board." *Id.* at 462. Second, even if the *Vinal* principle were applicable, CRAB had no way of knowing — nor can we know, on this record — that the credibility-based findings of the administrative magistrate conflicted with those of the Plymouth board. The Plymouth board articulated only its conclusion, not the findings on which the conclusion was based. Its conclusion might have been based on a simple disbelief of Geraldine Dunn's testimony or on a view that her suspicions of her husband's adulterous behavior were farfetched and unreasonable. On the other hand, the Plymouth board may have viewed her suspicions as both credible and reasonable but nevertheless concluded, after listening to the testimony of Larry ____, that John Dunn had not in fact been conducting an affair. On this last point, the administrative magistrate, as has been noted, made no finding. CRAB would have been justified (although not required, as discussed below) in remanding the file to the administrative magistrate for such a finding. Instead, by simply striking most of her findings of fact for a legally erroneous reason, the decision left CRAB in the position of having

disregarded its basic task of de novo fact-finding. The case must, therefore, be remanded to CRAB to fulfill its statutory function.

On remand CRAB will be called upon to apply the governing statute, G. L. c. 32, § 12(2)(*d*), the meaning of which, as the decision of the administrative magistrate suggests, is not free from ambiguity. The words "living apart for justifiable cause" could be read to refer either to an objectively reasonable belief in the other spouse's misconduct, or to actual marital misconduct. Either reading is plausible, but, in our view, the latter reading is correct.

The phrase "living apart for justifiable cause" is not defined in § 12(2)(*d*), and no cases have specifically construed the words "justifiable cause." However, in interpreting the words "living apart," we have stated, "[i]t is reasonable to assume that . . . the Legislature was aware of the construction of 'living apart' in the statutes in the Commonwealth dealing with divorce and separate support. It is also reasonable to assume that the Legislature intended that reference be made to that area of the law because the language at issue in § 12(2)(*d*) contains such phrases as 'living apart for justifiable cause' and 'desertion,' which are terms of art in domestic relations law." *Donnelly* v. *Contributory Retirement Appeal Bd.*, 15 Mass. App. Ct. 19, 22 (1982). Correspondingly, the meaning of "justifiable cause" should be taken from its usage in the law of divorce and separate support. In that realm, "justifiable cause" has long required proof of actual marital misconduct. See *Goldberg* v. *Goldberg*, 237 Mass. 279, 280-81 (1921) ("A wife is not justified in living apart from her husband and claiming separate support from him when the husband is without blame and the separation is not the result of ill treatment, misconduct, or failure of marital duty on his part . . . . [T]o support a decree in her favor there must be some evidence of a marital wrong" [citations omitted]); *Murray* v. *Murray*, 255 Mass. 19, 22 (1926) ("In the case at bar no marital wrong was committed and no act done which caused or was intended to cause the wife injury, or reasonable fear of danger to her physical health or safety"). While "[c]onduct which justifies a wife's living apart from her husband may be a lesser marital offense than one required to warrant a divorce," *Mezoff* v. *Mezoff*, 2 Mass. App. Ct. 799, 799 (1974), living apart cannot be considered "justified" on the basis of suspicions that have no grounding in an objective wrong

or failing. Moreover, while the evidence supporting Geraldine Dunn's objectively reasonable belief in her husband's homosexual affair would also be probative of the existence of such an affair, the de novo fact finder could instead accept the testimony of Larry __ as truthful.

If the appeal had been tried to the administrative magistrate on live testimony, we should require that on remand the case be recommitted to the magistrate to supply the critical finding, as she would be in a superior position to resolve a question of fact turning on credibility. See *Vinal* v. *Contributory Retirement Appeal Bd.*, 13 Mass. App. Ct. at 100-101. See also *Salem* v. *Massachusetts Commn. Against Discrimination*, 404 Mass. 170, 174-176 (1989). The testimony having been submitted in transcript form, however, CRAB is in as good a position as the administrative magistrate to evaluate the evidence and supply the missing finding. Whether to recommit lies in the discretion of CRAB.[4,5]

The judgment is reversed, and an order is to be entered remanding the case to CRAB for further proceedings in conformity herewith.

*So ordered.*

---

[4]In her brief, Geraldine Dunn has also raised the issue of whether the affidavit of Melanie Dunn, John Dunn's first wife, should have been allowed in evidence before the administrative magistrate pursuant to an agreement of the parties, allegedly approved by the administrative magistrate. The affidavit, which was anticipated but not yet available at the time of the hearing before the administrative magistrate, tended to corroborate Geraldine Dunn's testimony as to John Dunn's homosexuality and adultery. It appears that, before the administrative magistrate had issued her decision, the plaintiff moved to reopen the hearing to introduce this evidence, but the motion was objected to by Shelby Reno on the ground that her counsel was given no opportunity to challenge or rebut the affidavit because Melanie Dunn refused to talk to him. Whether to admit the affidavit on remand lies in the discretion of CRAB.

[5]We reject Geraldine Dunn's contention that if CRAB fails to render a decision on a case within the six-month period prescribed by § 16(4), second par., the decision of the administrative magistrate becomes final. The statutory time is directory, not mandatory. Compare *Cheney* v. *Coughlin*, 201 Mass. 204, 211 (1909); *Monico's Case*, 350 Mass. 183, 185-186 (1966); *Amherst-Pelham Reg. School Comm.* v. *Department of Educ.*, 376 Mass. 480, 496-497 (1978).