Kaplan, Mitchell H., J.
INTRODUCTION
This is an administrative appeal pursuant to G.L.c. 30A, §14. The plaintiff, Bernard Brady, seeks judicial review of a decision of the defendant, Contributory Retirement Appeal Board (“CRAB”). The defendant, State Board of Retirement (the “Board”), denied Brady’s request that he be classified as a member of Group 4 under G.L.c. 32, §3(2)(g) and instead classified him as a member of Group 2.[2] Brady timely appealed this decision to CRAB, which then assigned the appeal to the Massachusetts Division of Administrative Law Appeals (“DALA”), as required by G.L.c. 32, §16(4). A DALA magistrate conducted an evidentiary hearing and then issued a decision affirming the Board. Brady timely appealed the DALA decision to CRAB. CRAB adopted DALA’s findings of fact as its own, noting that they appeared to be undisputed, and affirmed DALA’s decision. Brady then filed this action for judicial review. The matter is currently before the court on Brady’s Motion for Judgment on the Pleadings in which he asks that CRAB’s decision be vacated and the court order the Board to classify him as a member of Group 4. For the reasons explained below, Brady’s Motion for Judgment on the Pleadings is DENIED and CRAB’s decision AFFIRMED.
BACKGROUND
The material facts on which this appeal turns are taken from the administrative record and are not in dispute.
Brady was born on March 31, 1954. He began working for the Department of Correction (the “DOC”) in 1977, as a Correction Officer I, and has continued to be employed by the DOC continuously since 1977. Over the following several years, Brady was promoted a number of times. In 1990, he became “permanent” in the civil service position of Correction Officer III. Then, in 1992, Brady was promoted to the position of Deputy Superintendent. In 2004, he was again promoted; this time to Acting Superintendent; and, in 2007, he accepted a voluntary demotion to Deputy Superintendent. From 2007, to the present, he has been a deputy superintendent for operations and security at the Massachusetts Treatment Center at Bridgewater. Since 1992, Brady has held senior management level positions within the DOC that were not civil service positions. In March 2008, Brady requested that the Board classify him under §3(2)(g) as a member of Group 4 and submitted forms necessary to have the Board act on his request. On April 24, 2008, he was informed that the Board had classified him as a member of Group 2, not 4.
*303 On March 11, 2003, the Deputy Director of the Division of Human Resources of the DOC wrote a letter to the Chief Human Resources Officer of the DOC in which he commented that some unnamed individual had informed him that a permanent civil service employee, who had been promoted to a non-civil service management position, such as Brady, would have to be placed on an approved leave of absence, in order to have the right to revert to his permanent civil service title. He enclosed a list of individuals who were apparently similarly situated to Brady, and asked that they be approved for leaves of absences. In a letter dated July 14, 2003, this same Deputy Director wrote Brady that he had been approved for a leave of absence from his permanent civil service title of Correction Officer III.
DISCUSSION
Standard of Review
The scope of review for an agency’s decision is defined by G.L.c. 30A, §14. Howard Johnson Co. v. Alcoholic Beverages Control Comm’n, 24 Mass.App.Ct. 487, 490 (1987). Pursuant to G.L.c. 30A, §14, the court may affirm, remand, set aside or modify an agency’s decision if it determines that the substantial rights of any party may have been prejudiced because the agency’s decision is: (1) based upon an error of law; (2) unsupported by substantial evidence; (3) unwarranted by facts found by the court on the record submitted; or (4) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law. G.L.c. 30A, §14(7).
The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies and Bonds, 27 Mass.App.Ct. 470, 474 (1989). In reviewing the agency’s decision, the courtis required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992). The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Reg'l Vocational Sch. Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982).
The court does not act as a de novo fact finder, nor is the court’s review a trial de novo on the record that was before the CRAB. Fergione v. Director of the Div. of Employment Sec., 396 Mass. 281, 283 (1985).
“(RJetirement law is notoriously complex” and the CRAB has been charged with interpreting G.L.c. 32. Namay v. Contributory Ret. Appeal Bd., 19 Mass.App.Ct. 456, 463 (1985). “It is settled that the findings and decisions of [CRAB] are to be sustained whenever possible and are not to be reversed unless they are wholly lacking in evidentiary support or are tainted by errors of law.” See Woolfall’s Case, 13 Mass.App.Ct. 1070 (1982), rev. denied by 386 Mass. 1104 (1982) (internal quotations and citations omitted).
In the present case the facts are straightforward and not in dispute. The question before the court is whether CRAB erred in its application of the classification criteria set out in G.L.c. 32, §3(2)(g) to Brady. In reviewing CRAB’s interpretation of this section, the court is mindful that it should “normally accord great weight to an administrative agency’s interpretation ... of the law which the agency is charged to administer,” especially, in an area as “notoriously complex” as retirement law. Namay, 19 Mass.App.Ct. at 463.
As relevant to this case, §3(2)(g) provides that the Board shall classify the following employees in Group 4:
[EJmployees of the department of correction who are employed at any correctional institution or prison camp under the control of said department and who hold the position of correction officer, female correction officer, industrial instructor, recreation officer, assistant industrial shop manager, industrial shop manager, assistant to the supervisor of industries, supervisor of industries, senior correction officer, senior female correction officer, supervising correction officer, supervising female correction officer, prison camp officer, senior prison camp officer, supervising prison camp officer, assistant deputy superintendent . . .
Since Brady was promoted to the position of Deputy Superintendent in 1992, the positions at which Brady has been employed by the DOC are not among those listed for DOC employees who the Board is to classify in Group 4. In Gaw v. Contributory Retirement Appeal Bd., 4 Mass.App.Ct. 250, 253 (1976), the Appeals Court rejected plaintiffs argument that, under §3(2)(g), the Board should classify an employee based on whether he has provided some of the same services to his employer that employees whose positions are listed in this section provide. In so doing, the Appeals Court reflected on the legislative history of this section:
As originally created Group 4 included only members of police and fire departments not classified in Group 1. Its purpose, as explained in the special report of the Retirement Law Commission recommending it, was to encourage earlier retirement of police officers and firemen in order to make room for younger men better able to perform the arduous and hazardous tasks expected of such employees. Group 4 was thereafter enlarged by successive amendments to include... other classes of employees. It is fair to assume that the additions were made for reasons similar to those underlying the creation of Group 4 in its original form... [W]e note that the Legislature has consistently described employees falling within Group 4 by naming their positions or titles rather than by describing the type of work they perform. (Internal quotations and citations omitted.)
*304 It would appear, therefore, that the Board and CRAB were correct in concluding that Brady should not be classified as a member of Group 4, because at the time of his request for classification he did not work in a position named in §3(2)(g), and had not since 1992.
Brady, however, argues that there are features of his employment histoiy and leave of absence status that establish that an error of law was committed when he was not classified in Group 4. First, Brady points out that in 1992, immediately prior to being promoted to deputy superintendent, he was a Correction Officer III, making him then both a “permanent” civil service employee and a member of Group 4. He then directs the court’s attention to G.L.c. 30, §46D. That statute encourages the promotion of employees or lower level managers of the Commonwealth to senior management level positions, whenever practicable. The statute then goes on to provide that:
In every instance of a manager or employee so promoted . . . from a position in which at the time of promotion he shall have tenure by reason of section nine A of this chapter, upon termination of his service in the position to which he was so promoted, the manager or employee shall, if he so requests, be restored to the position from which he shall have been promoted, or to a position in the same state agency, without impairment of his civil service status or his tenure by reason of said section nine A or loss of the seniority, retirement and other rights to which uninterrupted service in such position would have entitled him; . . .
Brady argues that this statute, even without regard to his special status as an employee on leave of absence from his position as a Correction Officer III, entitles him to Group 4 classification. He reasons that, under G.L.c. 30, §46D, he could demand to be terminated as a deputy superintendent and “restored” to his position as a Correction Officer III. He then would be entitled to the retirement rights of a Correction Officer III, i.e., the right to be classified in Group 4. The court has some question as to whether §46D gives a senior manager, such as a deputy superintendent, the right to demand that he be terminated from his senior management position and then restored to the civil service status that he last enjoyed some twenty years earlier. Another interpretation of this section might be that it provides protection to a civil servant who accepts a senior position and is later terminated, perhaps because a new secretary or commissioner is appointed as part of a new administration and wants his/her own management team, but does not offer the employee the right to demand demotion from senior management back to a civil service employee. The court, however, need not wrestle with that question, as Brady never asked to be demoted to a Correction Officer III so that he could retire earlier, but rather argues only that he should be classified in Group 4, because he could do that. The court is convinced that G.L.c. 30, §46D, even if it gives Brady the right to be restored to his prior civil service position at any time he chooses, does not serve as an unstated proviso or supplement to the language of G.L.c. 32, §3(2)(g).
It may also be noted that, many years ago, in Maddocks v. Contributory Retirement Appeal Bd., 369 Mass. 488 (1976), the Supreme Judicial Court made it clear that when an employee accepts a promotion from what might be described as a line or direct care position to a supervisory position, this may carry with it a loss of certain early retirement benefits that went with the prior position. The employee receives the benefit of higher pay and status and cannot later complain that she has lost retirement benefits, even if she did not make inquiry and therefore was unaware of this consequence when she accepted the promotion. Brady accepted the position of deputy superintendent in 1992. That appears to be a position with substantially greater responsibility, prestige, and, presumably, pay than Correction Officer III. There is no reason to read into §3(2) (g) some unstated right to be classified in Group 4, because many years ago Brady was promoted from a position that offered the opportunity for earlier retirement.
As noted above, Brady also argues that because he is on a continuing leave of absence from the position of Correction Officer III, he must be found to “hold” that position, within the meaning of §3(2) (g), as well as the position of Deputy Superintendent, and he therefore falls within the statutory definition of a member of Group 4. Brady points out that while some descriptions of employees who are to be classified in Group 4 make reference to employees of an agency or department “who are employed as” certain designated workers[3] the DOC provisions of §3(2)(g) speak of “employees of the department of correction who are employed at any correctional institution or prison camp under the control of said department and who hold the position of . . .” (emphasis supplied). Brady asserts that the use of the words “hold the position” instead of “employed as” has special significance. Since he is on leave of absence from the position of Correction Officer III, he still “holds” that position, even if he has not been employed as a Correction Officer III since 1992.
Neither Brady nor CRAB can point the court to any useful authority that touch upon the definitions of “hold” and/or “leave of absence,” or the way these terms may relate to one another in the circumstances presented by this case. Does a person such as Brady hold the position of Correction Officer III because he was granted a perpetual leave of absence from it in 2003, some eleven years after he was promoted to the position of deputy superintendent? Certainly, a reasonable interpretation of the language in question is that, as used in §3 (2) (g), one holds the position in which he is, and for many years has been, working, not the position from which he is on leave of absence *305 and to which he could be “restored” under G.L.c. 30, §46B, if he were ever terminated from his senior management position. In G.L.c. 32, §20(l)(b), the legislature provided that: “The state employees’ retirement system shall be managed by the state board of retirement. . . Said board shall have the general powers and duties set for the in subdivision (5) of this section.” Subdivision (5) then states in relevant part: “Any such board may adopt by-laws and make rules and regulations consistent with law . . . ,” subject to the approval of the Public Employee Retirement Administration Commission. Clearly, the Board and this Commission are the agencies the legislature has designated to implement the laws governing the contributory retirement system. The legislature also created CRAB to hear appeals from decisions made by the Board, among other retirement boards, so that CRAB could add its learning and expertise to the administrative review process. See Namay, 19 Mass.App.Ct. at 463-64. This court cannot say that the Board and CRAB erred in concluding that the position that Brady holds, within the meaning of §3(2)(g), is the position in which he is working, not that from which he was granted an indefinite leave of absence. Indeed, that would appear to be an interpretation consistent with the purpose for which Group 4 was created, as the Appeals Court described that purpose in Gaw.
Finally, the Court notes that the Board, but not CRAB, relied, in part, in its decision on a Group Classification Policy established by the Board which states that an employee seeking classification in a particular group must “certify that he has been actively working in the position under consideration for twelve consecutive months prior to retirement.” Brady argues that this policy is inconsistent with the language of §3(2) (g), and, in any event, constitutes a regulation that was imposed on all employees but was not promulgated in compliance with the requirements of G.L.c. 30A, §§2-6D, which generally include notice of the proposed regulation, a hearing, and filing of the regulation with the Secretary of State. See, e.g., Kneeland Liquor v. Alcoholic Beverages Control Comm’n, 345 Mass. 228 (1962). The court concludes that CRAB was correct in concluding that it need not address the validity of this Policy, because the administrative record demonstrates that Brady did not request/demand demotion to Correction Officer HI, but rather sought classification while employed as the Deputy Superintendent of the Treatment Center. The question whether the DOC could restore Brady to his Correction Officer in position for some brief period to allow him to be classified in Group 4, for purposes of retirement, consistent with the Supreme Judicial Court’s interpretation of G.L.c. 30, §3(2) (g) set out in Pysz v. Contributory Retirement Appeal Bd., 403 Mass. 514 (1988),[4] is not presented by this case.
ORDER
For the foregoing reasons, the plaintiffs motion for judgment on the pleadings is DENIED and CRAB’S decision AFFIRMED.

As a practical matter, this difference in classification means that Brady’s rights to receive superannuation retirement benefits begin at age fifty-five rather than a younger age and his maximum benefits accrue at age 60 rather than age 55. See G.L.c. 32, §5(2)(a). See also Gallagher v. Contributory Retirement Appeal Bd., 4 Mass.App.Ct. 1, 4, n.8 (1976).

See, e.g., “employees of the Massachusetts Port authority who are employed as . . .”

In Pysz, the SJC held that an employee would not be permitted to increase his retirement benefits by accepting a direct patient care position two weeks before retirement because this “would circumvent the intent of the legislature when it adopted the classification system.” Id. at 518.